**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KELLY DAVID JOHNSON** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 15-4400** |
| **NCL (BAHAMAS) LTD. D/B/A NORWEGIAN CRUISE LINE** | **SECTION: "G"(3)** |

## ORDER

Before the Court are Defendant NCL (Bahamas) Ltd.'s ("NCL") "Motion to Compel Arbitration and Stay Proceedings"[1] and Plaintiff Kelly David Johnson's ("Johnson") "Motion to Remand."[2] Having considered the motions, the memoranda in support and in opposition, the record, and the applicable law, the Court will grant Defendant's motion to compel arbitration and deny Plaintiff's motion to remand.

## I.  Background

On June 25, 2015, Plaintiff, an alleged seaman aboard a vessel owned by NCL, filed suit in Civil District Court for Orleans Parish seeking damages pursuant to the Jones Act, the Federal Employers Liability Act ("FELA"), and general maritime law for injuries he allegedly sustained on October 31, 2014 while attempting to exit his bunk after being suddenly awoken by an unannounced drill.[3] Johnson, a U.S. citizen, worked as a casino pit supervisor aboard the Norwegian Dawn ("the Dawn"), a Bahamian-flagged passenger cruise vessel operated by NCL.[4] Johnson's employment

_____

[1] Rec. Doc. 5.

[2] Rec. Doc. 6.

[3] Rec. Doc. 1-2 at p. 4.

[4] Rec. Docs. 7 at pp. 2–3; 5-1 at p. 1.

1

with NCL, which began on August 15, 2014 and was scheduled to last until February 15, 2015,[5] was governed by a Seafarer's Employment Agreement ("Employment Agreement"), which contained an arbitration clause mandating that any claims relating in any way to Johnson's employment would be "referred to and resolved exclusively by binding arbitration pursuant to United Nations Convention on Recognition and Enforcement of Foreign Arbitral Awards (New York 1958) ('The Convention')."[6]

On September 14, 2015, Defendant filed a "Notice of Removal" pursuant to 9 U.S.C. § 205, which provides for removal of causes of action relating to an arbitration agreement falling under the Convention.[7] Defendant then filed a "Motion to Compel Arbitration and Stay Proceedings" on September 30, 2015.[8] On October 20, 2015, Johnson filed an opposition.[9] On October 28, 2015, with leave of Court, Johnson filed an amended opposition solely to correct typographical errors.[10] On the same day, Defendant filed a reply in support of its motion to compel arbitration and stay proceedings.[11]

While the motion to compel arbitration was pending, on October 13, 2015, Johnson filed a

---

[5]  Rec. Doc. 5-1 at p. 3. Plaintiff's employment in fact ended on November 30, 2014. *Id.*

[6]  Rec. Doc. 7 at p. 2.

[7]  Rec. Doc. 1.

[8]  Rec. Doc. 5.

[9]  Rec. Doc. 8.

[10]  Rec. Doc. 15.

[11]  Rec. Doc. 17.

motion to remand the case.[12] NCL filed an opposition on October 20, 2015.[13] With leave of Court, Johnson filed a reply in support of remand on October 29, 2015,[14] and NCL filed a sur-reply on the same day.[15]

## II. Parties' Arguments

A.   *Motion to Compel Arbitration and Stay Proceedings*

### 1.   Defendant's Arguments in Support of Its Motion to Compel Arbitration and Stay Proceedings

In its motion, NCL argues that arbitration of Plaintiff's claims is the exclusive and mandatory form of dispute resolution under the Employment Agreement.[16] NCL argues that, because Plaintiff signed an arbitration clause pursuant to the Convention, the Court may engage in only a limited inquiry to determine whether the Convention requires compelling arbitration in a particular case.[17] According to NCL, the Court's preliminary inquiry consists of determining whether: (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) one of the parties is not a U.S. citizen, or where all parties to the agreement are U.S. citizens, the relationship involves property located abroad, envisages performance or enforcement abroad, or has some other

---

[12] Rec. Doc. 6.

[13] Rec. Doc. 7.

[14] Rec. Doc. 19.

[15] Rec. Doc. 21.

[16] Rec. Doc. 5-1 at p. 1.

[17] *Id.* at p. 4 (citing *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004); *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 273 (5th Cir. 2002)).

reasonable relation with one or more foreign states.[18] NCL avers that if the four jurisdictional prerequisites are met, and no affirmative defense applies, the Court must compel arbitration.[19]

Here, NCL contends, all jurisdictional prerequisites are met and arbitration is therefore required.[20] According to NCL, it is "unquestionabl[e]" that there is a written agreement to arbitrate this dispute, which provides for arbitration in the United States, a Convention signatory.[21] NCL also avers that the employment relationship between itself and Johnson was a commercial relationship that envisaged performance abroad.[22] NCL claims that the Convention therefore applies, and because Plaintiff lacks any basis for attacking the arbitration clause's validity or ability to be performed, the clause must be enforced.[23]

Specifically, NCL argues that the Employment Agreement "unquestionably envisaged performance abroad" given that Johnson's work as a casino pit supervisor was to be performed primarily outside the United States.[24] According to NCL, during Plaintiff's time on the Dawn, it touched ports in ten different countries and constantly sailed.[25] NCL argues that although both it and Plaintiff are U.S. citizens, the Convention explicitly states that a legal relationship entirely between citizens of the United States may nevertheless be governed by the Convention if a contract for work

---

[18] *Id.* at pp. 4–5 (citing 9 U.S.C. § 202; *Freudensprung*, 379 F.3d at 339–40).

[19] *Id.* at p. 5 (citing *Sedco, Inc. v. Petroleos Mexicanos Mex. Nat'l Oil Co.*, 767 F.2d 1140, 1146 (5th Cir. 1985); *Bautista v. Star Cruises*, 396 F.3d 1289, 1294–95 (11th Cir. 2005)).

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.* at p. 8.

[25] *Id.*

on a vessel in foreign waters envisages performance abroad.[26] According to NCL, in *Freudensprung v. Offshore Technical Services, Inc.*, the Fifth Circuit affirmed a district court decision compelling arbitration in a case where the agreement at issue was between an American company and an American individual for work aboard a sea-going barge in West African waters, finding that the agreement envisaged performance abroad.[27]

NCL contends that the term "abroad" is "generally defined as '[o]utside a country,'"[28] which is consistent with the strong public policy in favor of international arbitration, as well as the Fifth Circuit's holding in *Freudensprung*.[29] According to NCL, the definition of "abroad" is not limited to foreign soil, and instead encompasses any place outside of the United States and its territorial waters, including international waters and the territorial waters of other nations.[30] NCL cites other recent cases in which it claims, in the passenger cruise ship context, crewmember employment agreements were found to envisage performance abroad where the plaintiff's work was to be performed primarily outside the United States.[31] In fact, NCL claims, in *D'Cruz v. NCL (Bahamas) Ltd.*, a judge in the Southern District of Florida compelled the plaintiff, an American IT systems manager, to arbitrate claims for injuries allegedly sustained onboard the Dawn, the same vessel

---

[26] *Id.* (citing *Freudensprung*, 379 F.3d at 340–41).

[27] *Id.* (citing *Freudensprung*, 379 F.3d at 340–41).

[28] *Id.* (citing *Odom v. Celebrity Cruises, Inc.*, 2011 U.S. Dist. LEXIS 157309, at *4 (S.D. Fla. Feb. 23, 2011) (Jordan, J.) (citing *Black's Law Dictionary* 6 (8th ed. 2004))).

[29] *Id.* at p. 9 (citing *Odom*, 2011 U.S. Dist. LEXIS 157309, at *5).

[30] *Id.*

[31] *Id.* (citing *D'Cruz v. NCL (Bahamas) Ltd.*, 2015 U.S. Dist. LEXIS 40326, at *3 (S.D. Fla. Mar. 30, 2015) (King, J.); *Rutledge v. NCL (Bahamas) Ltd.*, 2015 U.S. Dist. LEXIS 12554, at *7–8 (S.D. Fla. Feb. 3, 2015) (Moreno, J.); *Odom*, 2011 U.S. Dist. LEXIS 157309, at *4–5; *Ringewald v. Holland Am. Line–USA, Inc.*, 2015 U.S. Dist. LEXIS 89758, at *2–3 (S.D. Fla. July 10, 2015) (King, J.)).

involved in the present case.[32] There, NCL contends, the court rejected the plaintiff's argument that he did not perform his duties abroad because he worked solely on the ship and not in any foreign states, holding that the language of the Convention, which employs the broad term "abroad," was not limited only to the performance of employment duties *in* foreign states.[33]

NCL avers that the contractual relationship between Plaintiff and NCL clearly contemplated performance abroad given that, during Plaintiff's time aboard the vessel, the Dawn spent more than 80% of her time abroad.[34] NCL claims that at the time that Plaintiff signed the Employment Agreement, the Dawn was scheduled to regularly sail to numerous foreign countries, including Bermuda, Honduras, Belize, Mexico, Curaçao, Canada, Jamaica, Cayman Islands, and Aruba.[35] According to NCL, during the Dawn's sailings between August 15, 2014 and November 30, 2014—the time Johnson was employed aboard the vessel—onboard gaming usually only took place when the ship was at least three nautical miles from the land of the U.S.[36] Furthermore, NCL argues, the Supreme Court has held that a ship "is deemed to be a part of the territory of that sovereignty whose flag it flies, and not to lose that character when in navigable waters within the territorial limits of another sovereignty."[37] Defendant claims that the Dawn sails under the flag of the Bahamas and, as a result, to the extent the ship spent any time in U.S. ports or waters, it maintained its character

---

[32]  *Id.* (citing *D'Cruz*, 2015 U.S. Dist. LEXIS 40326, at *1).

[33]  *Id.* (citing *D'Cruz*, 2015 U.S. Dist. LEXIS 40326, at *3–4).

[34]  *Id.* at p. 10.

[35]  *Id.*

[36]  *Id.*

[37]  *Id.* (citing *Lauritzen v. Larsen*, 345 U.S. 571, 585 (1953)).

pursuant to Supreme Court precedent.[38] Thus, Defendant argues, the law is clear that Johnson's claims are subject to arbitration in the United States and the Court should compel arbitration and stay the instant proceedings.[39]

### 2. Plaintiff's Arguments in Opposition to Arbitration

In opposition, Plaintiff first argues that NCL's motion should be denied because the case should instead be remanded to the Civil District Court of Orleans Parish, arguments Plaintiff elaborates on in its motion to remand.[40] Next, Johnson argues that the Convention does not apply to this case because it involves two United States citizens.[41] Johnson avers that, despite relying heavily on case law from the Southern District of Florida, NCL has failed to advise the Court of contrary decisions in *Armstrong v. NCL (Bahamas) Ltd.*,[42] *Matabang v. Carnival Corp.*,[43] and *Hines v. Carnival Corp.*,[44] each of which Plaintiff argues held that: (1) due to a lack of a foreign connection, the Convention does not apply to a cruise ship employee's injury and/or (2) that an employee's case removed pursuant to the Convention must be remanded to state court.[45] Johnson also alleges that NCL failed to inform the Court that the decision in *D'Cruz v. NCL (Bahamas) Ltd.*,

---

[38] *Id.*

[39] *Id.* at p. 11.

[40] Rec. Doc. 15 at p. 1.

[41] *Id.* (citing *Armstrong v. NCL (Bahamas) Ltd.*, 998 F. Supp. 2d 1335 (S.D. Fla. 2013)).

[42] 998 F. Supp. 2d 1335 (S.D. Fla. 2013).

[43] 630 F. Supp. 2d 1361 (S.D. Fla. 2009).

[44] No. 11-20862, 2012 WL 1744843 (S.D. Fla. Mar. 30, 2012).

[45] Rec. Doc. 15 at p. 1 n.1.

on which NCL relies, is currently on appeal to the Eleventh Circuit.[46]

Next, Johnson argues that in *Freudensprung v. Offshore Technical Services, Inc.*, cited by NCL, the Fifth Circuit held that the Convention does not apply to agreements between United States citizens, such as the one in this case, unless "there is a reasonable connection between the parties' commercial relationship [the agreement] and a foreign state which is independent of the arbitral clause itself."[47] Plaintiff avers that although NCL characterizes *Freudensprung* as Fifth Circuit authority supporting its position that any work outside of the United States constitutes performance envisaged abroad, "*Frendensprung* instead stands for the proposition that a contract specifically calling for performance in a foreign state envisages performance abroad, which was the legislative intent behind § 202 when it was enacted by Congress and was the drafters' intent when they borrowed the Uniform Commercial Code's interpretation of 'abroad' meaning in a foreign state."[48]

Plaintiff argues that, here, both he and NCL are United States citizens, Plaintiff signed an employment agreement in Boston, Massachusetts, and the agreement was silent as to a place of performance other than mentioning the Dawn as the initial vessel on which Plaintiff would serve, subject to being reassigned to other unnamed vessels.[49] According to Plaintiff, no itinerary was attached to the contract, and Plaintiff was not informed of or aware of the Dawn's itinerary when he signed the contract.[50] Plaintiff alleges that he performed all of his work as a casino pit supervisor

---

[46] *Id.* (citing *D'Cruz v. NCL (Bahamas) Ltd.*, No. 15-11766 (NOA docketed 4/23/15 11th Cir.)).

[47] *Id.* at p. 2 (quoting 379 F.3d 327, 339–40 (5th Cir. 2004)).

[48] *Id.* at p. 2 n.2 (citing *Ensco Offshore Co. v. Titan Marine L.L.C.*, 370 F. Supp. 2d 594, 597 (S.D. Tex. 2005)).

[49] *Id.* at p. 2.

[50] *Id.*

in the vessel's casino and never worked onshore in a foreign country while serving on the Dawn.[51] According to Johnson, the vessel's casino was closed whenever the vessel was in foreign territorial waters, except for the waters of Bermuda, and he was not required to perform his work duties when the casino was closed.[52]

Johnson contends that the burden of establishing jurisdiction under the Convention is on the party asserting such jurisdiction—here, NCL.[53] Johnson avers that NCL cannot do so because the employment agreement in this case, as in *Armstrong, Matabang*, and *Hines*, does not call for performance in a foreign state.[54] Plaintiff cites *Ensco Offshore Co. v. Titan Marine L.L.C.*, a Southern District of Texas case in which Plaintiff avers that the court held that a clause in a contract between two U.S. companies calling for arbitration in London under English law was not sufficient to establish a reasonable connection with a foreign state where the contract called for performance in international waters in the Gulf of Mexico.[55] Similarly, Plaintiff contends, the Second Circuit has held that a contract between United States citizens calling for arbitration in England under English law, but calling for performance off the coast of Long Island, did not "envisage performance abroad."[56] According to Johnson, contrary to NCL's assertions, time spent on a vessel traveling in international waters or traveling from port to port does not envisage performance abroad for

---

[51] *Id.*

[52] *Id.*

[53] *Id.* at p. 3.

[54] *Id.*

[55] *Id.* (citing 370 F. Supp. 2d at 597).

[56] *Id.* (citing *Jones v. Sea Tow Servs. Freeport N.Y. Inc.*, 30 F.3d 360, 365–66 (2d Cir. 1994)).

purposes of § 202.[57] Johnson quotes at length from *Armstrong*, in which a judge in the Southern District of Florida found that an agreement did not envisage performance of work abroad because the plaintiff worked only aboard a vessel and never on foreign soil.[58] Furthermore, Johnson argues, the fact that the Dawn flew a "flag of convenience" does not establish a connection with a foreign state.[59] According to Plaintiff, in *Matabang*, the court expressly rejected that argument, finding that because the vessel and its owner were based in the United States, the flag of convenience of the vessel did not inject a foreign element into the contract.[60]

Finally, Johnson briefly argues that the Employment Agreement's selection of Bahamian law in place of the Jones Act voids the arbitration clause because it violates the Jones Act's statement that "[a]ny contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void."[61] Plaintiff avers that the "'effective vindication' exception, which prohibits an arbitration agreement constituting a prospective waiver of a plaintiff's statutory right (such as the right to proceed under the Jones Act), renders both the alleged arbitration agreement and the choice of law agreement contained therein void."[62]

### 3. Defendant's Arguments in Further Support of Arbitration

In reply, Defendant contends that the Employment Agreement expressly contemplates

---

[57] *Id.* (citing *Armstrong v. NCL (Bahamas) Ltd.*, 998 F. Supp. 2d 1335, 1338–39 (S.D. Fla. 2013)).

[58] *Id.* at p. 4 (citing *Armstrong*, 998 F. Supp. 2d at 1338–39).

[59] *Id.* (citing *Lindo v. NCL (Bahamas) Ltd.*, 652 F.2d 1257, 1260 (11th Cir. 2011)).

[60] *Id.* (citing *Matabang v. Carnival Corp.*, 630 F. Supp. 2d 1361 (S.D. Fla. 2009)).

[61] *Id.* at pp. 4–5 (citing 45 U.S.C. § 55).

[62] *Id.* at p. 5 (citing *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013)).

performance "abroad" under controlling legal authority "and under the most rational and common understanding of that term."[63] NCL argues that the Employment Agreement also satisfies the alternative basis under the Convention, in that it bears a substantial relation to one or more foreign states.[64] NCL also avers that the Court should reject Plaintiff's "vague statements regarding the potential application of Bahamian law as premature and contrary to the law of this Circuit."[65]

First, Defendant contends that the Employment Agreement clearly contemplated performance abroad, as Plaintiff was hired to serve onboard NCL's vessels, whose movement to foreign ports of call through foreign territorial and international waters was an integral part of the bargain between Johnson and NCL.[66] According to NCL, Paragraph 14 of the Employment Agreement states that "[t]he Seafarer guarantees that no circumstances exist which would hinder him/her from obtaining the necessary documents and visas required for travel to and from the **vessels located worldwide**."[67] Similarly, Defendant contends, Johnson was required to state his nationality, place of birth, passport number and expiration date, visa type and visa expiration date.[68] NCL claims that the Agreement repeatedly references repatriation of the seafearer at completion of the contract or at his dismissal, and that Plaintiff agreed that he was subject to being transferred to any other ship during the term of his contract.[69] According to NCL, only Johnson's initial assignment was on board

---

[63] Rec. Doc. 17 at p. 1.

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] *Id.* at pp. 1–2.

[68] *Id.* at p. 2.

[69] *Id.*

the Dawn, and the port at which he would sign off at the end of his term was to be determined.[70] Of the 13 ships operated by NCL, Defendant avers, all but one had a casino onboard, and the ships regularly call at ports in more than 70 different countries on every continent except Antarctica.[71] According to Defendant, many of the cruises never enter U.S. ports or territorial waters, and the "decidedly international flavor of the Employment Agreement is integral to virtually every aspect of Plaintiff's employment, and not merely incidental as Plaintiff would have this Court believe."[72]

NCL cites the Fifth Circuit's decision in *Fredensprung*, tracking the language of § 202, as holding that the Convention applies to "a relationship involving property abroad **or** contemplating performance or enforcement abroad **or** having some other reasonable relation with one or more foreign states."[73] NCL argues that Plaintiff conflates these three independent bases by claiming that a contract envisaging performance abroad also requires a separate, reasonable relation with foreign soil.[74] According to NCL, however, no Fifth Circuit authority, nor the statute itself, requires anything more than a contemplation of the relationship being performed outside of the United States.[75] To read the statute and *Freudensprung* as Johnson suggests, Defendant contends, would render the "envisages performance or enforcement abroad" basis meaningless, a result prohibited by the basic canon of statutory construction "that when interpreting a statute, all parts of a statute should be given

---

[70] *Id.*

[71] *Id.*

[72] *Id.*

[73] *Id.* at p. 3 (citing *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339, 340 (5th Cir. 2004))

[74] *Id.*

[75] *Id.*

effect, and an interpretation making any part superfluous or meaningless should be avoided."[76]

Next, Defendant argues that although Plaintiff makes much of the fact that the Dawn's itinerary was not attached to the Employment Agreement, nothing in § 202 requires the contract at issue to expressly state that performance will take place in a particular country.[77] NCL argues that such a requirement would be too rigid, and it would be unreasonable to require NCL to attach the itineraries of every one of its vessels to the Employment Agreement.[78] According to NCL, even if Plaintiff was unaware of the ports to which NCL vessels sailed, which is unlikely given NCL's advertising campaigns and the availability of online information, the international nature of the Employment Agreement is clear from its uses of the terms "worldwide" and "repatriate" and its requirement that Plaintiff be able to obtain travel visas and other documents for international travel.[79]

Defendant argues that Johnson's argument that the Convention does not apply because he was not required to set foot on foreign soil is contrary to controlling Fifth Circuit authority in *Freudensprung* and to the Supreme Court's recognition that the goal of the Convention "was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries."[80] NCL claims that, in relying on *Matabang* and *Armstrong,* decisions from the Southern District of Florida, Plaintiff ignores the fact that this Court,

---

[76] *Id.* (quoting *United States v. Vigil*, 774 F.3d 331, 335 (5th Cir. 2014)).

[77] *Id.*

[78] *Id.*

[79] *Id.*

[80] *Id.* at p. 4 (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974)).

unlike the Southern District of Florida, is bound by the Fifth Circuit's holding in *Freudensprung*.[81] NCL concedes that both *Matabang* and *Armstrong* held that the contracts at issue did not envisage performance abroad because they did not involve work on foreign soil, but notes that the *Matabang* court further relied on the fact that the contract contained no references to performance abroad or any foreign state, unlike the contract here.[82] NCL argues that such requirements are not found in the Convention, as properly interpreted and applied in *Freudensprung*, a case in which NCL claims there was no indication that the plaintiff ever set foot on foreign soil—only that he was hired to work on a seagoing derrick barge in West African waters.[83] Furthermore, NCL avers, the applicable contracts in *Freudensprung* did not expressly state that the plaintiff would be working in the waters or soil of a particular foreign state, but the Fifth Circuit nevertheless properly concluded that the Convention applied.[84] Additionally, NCL claims, a line of more recent cruise industry cases out of the Southern District of Florida have rejected the *Matabang* and *Armstrong* rationale and compelled arbitration.[85]

Next, NCL argues that even if the Court interprets the term "abroad" more narrowly than its plain meaning of "outside the United States," the Convention applies with equal force in this case because the Employment Agreement satisfies the "reasonable relation to one or more foreign states"

---

[81] *Id.*

[82] *Id.* (citing *Matabang v. Carnival Corp.*, 630 F. Supp. 2d 1361, 1366 (S.D. Fla. 2009)).

[83] *Id.*

[84] *Id.*

[85] *Id.* at p. 5 (citing *Ringewald v. Holland Am. Line–USA, Inc.*, 2015 U.S. Dist. LEXIS 89758 (S.D. Fla. July 10, 2015) (King, J.); *D'Cruz v. NCL (Bahamas) Ltd.*, 2015 U.S. Dist. LEXIS 40326 (S.D. Fla. Mar. 30, 2015) (King, J.); *Rutledge v. NCL (Bahamas) Ltd.*, 2015 U.S. Dist. LEXIS 12554 (S.D. Fla. Feb. 3, 2015) (Moreno, J.); *Odom v. Celebrity Cruises, Inc.*, 2011 U.S. Dist. LEXIS 157309 (S.D. Fla. Feb. 23, 2011) (Jordan, J.)).

basis for application of the Convention under § 202 and *Freudensprung*.[86] In *Freudensprung*, NCL contends, the plaintiff worked only in Nigerian waters, whereas here, Plaintiff was hired as a crewmember to work on any combination of NCL's vessels that call in over 70 different countries.[87] According to NCL, having relations with such a volume of foreign states falls squarely within the purview of the Convention and § 202.[88] Furthermore, NCL contends, in the 3.5 months that Plaintiff was on board the Dawn, 8 of the vessel's 11 cruises were to Bermuda where, as Plaintiff concedes, the casino remained open.[89] According to NCL, this demonstrates a substantial relation with Bermuda that is sufficient to establish applicability of the Convention.

NCL argues that, although Plaintiff seeks to have the Court constrain its assessment of the Convention's application to the times during which the casino aboard the Dawn was in operation, Plaintiff's position is at odds with § 202's requirement that the Court focus on the Employment Agreement as a whole to determine its international character.[90] NCL contends that its ships' movements to foreign ports of call was an integral part of the Employment Agreement, and that furthermore, Plaintiff's job duties included more than just working in the pit when the casino was open, but also extended to maintaining the casino inventory, completing relevant paperwork, participating in training programs, evaluating subordinates, and so on.[91] Therefore, NCL claims, Johnson's employment relationship with NCL was not suspended during the hours the casino was

---

[86] *Id.*

[87] *Id.*

[88] *Id.*

[89] *Id.* at p. 6.

[90] *Id.*

[91] *Id.* at pp. 6–7.

closed, and instead continued while the vessel was in foreign or international waters.[92]

NCL next criticizes Johnson's reliance on a Southern District of Texas decision in *Ensco Offshore Co. v. Titan Marine L.L.C.*, arguing that the case is distinguishable on its facts because *Ensco* involved a contract between two American companies for delivery of oil rig pieces from a rig located on the Outer Continental Shelf just off the Gulf Coast to Texas.[93] According to NCL, *Ensco* did not involve the employment of a seafarer on vessels calling in one foreign port after the other, and furthermore, the *Ensco* court favorably cited the *Freudensprung* decision as having held that connection to a single foreign state satisfied the Convention requirement.[94] NCL argues that *Ensco*, unlike this case, did not involve any foreign states and the employment contract at issue lacked the required international connection that "is so apparent in the present case."[95]

Finally, NCL alleges that Plaintiff's argument regarding the application of Bahamian law is "entirely unsupported by fact or law," noting that Plaintiff did not explain how the purpose or intent behind the choice of Bahamian law clause in the Employment Agreement was to exempt NCL from liability for his alleged injuries.[96] NCL contends that Plaintiff cites no relevant case law in support of his argument against enforcing the arbitration agreement, and moreover, any such argument is improper at this initial arbitration enforcement stage.[97] NCL avers that the Convention provides two causes of action in federal court: (1) an action to compel arbitration in accordance with the terms

---

[92] *Id.* at p. 7.

[93] *Id.* at pp. 7–8 (citing 370 F. Supp. 2d 594 (S.D. Tex. 2005))

[94] *Id.* at p. 8 (citing 370 F. Supp. 2d at 599).

[95] *Id.*

[96] *Id.*

[97] *Id.*

of the agreement under 9 U.S.C. § 206, and (2), at a later stage, an action to confirm an arbitral award made pursuant to an arbitration agreement under 9 U.S.C. § 207.[98] According to NCL, the defense that Plaintiff wishes to rely on—namely that enforcement or recognition of an arbitration award would be contrary to public policy—applies only at the award enforcement stage, and not at the initial arbitration enforcement stage.[99] Defendant argues that the Supreme Court has squarely rejected arguments such as Plaintiff's at this stage of the proceedings, where the Court must consider solely whether to compel arbitration.[100] Furthermore, NCL contends, the Fifth Circuit in *Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft mbH & Cie KG* recently rejected arguments similar to Plaintiff's and compelled a seaman to arbitrate his Jones Act and general maritime claims against his employer in the Philippines under Philippine law.[101] Therefore, NCL claims, the Court should reject Plaintiff's arguments and compel arbitration here.

**B.    *Motion to Remand***

**1.    Defendant's Notice of Removal**

In its notice of removal, Defendant argues that 9 U.S.C. § 205 allows for the removal of causes of action relating to an arbitration agreement falling under the Convention.[102] Defendant states that Plaintiff signed an Employment Agreement containing an arbitration provision requiring

---

[98]   *Id.*

[99]   *Id.* at p. 9 (citing *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540–41 (1995); *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 274 (2009)).

[100]   *Id.*

[101]   *Id.* (citing 783 F.3d 1010, 1021–22 (5th Cir. 2015)).

[102]   Rec. Doc. 1 at p. 2.

17

Plaintiff to submit all disputes to arbitration.[103] Defendant argues that the Agreement envisaged performance abroad and therefore falls under the Convention, allowing removal of the entire case to federal court.[104]

### 2.   Plaintiff's Arguments in Support of Remand

In support of its motion to remand, Plaintiff argues that this action is clearly brought under the Jones Act and FELA.[105] According to Johnson, the Jones Act, which incorporates FELA, specifically prohibits removal to any district court of the United States.[106] Therefore, Plaintiff claims, Defendant wrongfully removed this case in violation of 28 U.S.C. § 1445(a), and this case should be remanded to state court with attorney's fees and costs incurred in this motion to be taxed against Defendant.[107] Furthermore, Johnson argues, an alleged arbitration agreement between the parties would not allow removal in light of the clear statutory language prohibiting removal.[108]

### 3.   Defendant's Arguments in Opposition to Remand

In opposition, Defendant argues that the case was properly removed because it is settled law in the Fifth Circuit that the arbitration provision in the Employment Agreement, governed by the Convention, allows removal to federal court even of Jones Act claims.[109] NCL argues that 9 U.S.C.

---

[103]  *Id.*

[104]  *Id.* at p. 3.

[105]  Rec. Doc. 6-1 at p. 1.

[106]  *Id.* at p. 2 (citing *Panama R.R. Co. v. Johnson*, 264 U.S. 375, 391–92 (1924); *Fields v. Pool Offshore, Inc.*, 182 F.3d 353, 356 (5th Cir. 1999); *Pate v. Standard Dredging Corp.*, 193 F.2d 498, 500–03 (5th Cir. 1952)).

[107]  *Id.*

[108]  *Id.* at p. 2 n.1.

[109]  Rec. Doc. 7 at p. 1.

§ 205, governing removal of claims that "relate to an arbitration or agreement of award falling under the Convention," has been recognized by the Fifth Circuit as "one of the broadest removal provisions . . . in the statute books."[110] Therefore, NCL avers, the Fifth Circuit has held that "absent the rare frivolous petition for removal, as long as the defendant claims in its petition that an arbitration clause provides a defense, the district court will have jurisdiction to decide the merits of that claim."[111]

According to NCL, Plaintiff's Jones Act claim does not defeat removal under the Convention because the Fifth Circuit has recognized that the Convention, an international treaty, is an exception to the general rule cited by Plaintiff that Jones Act claims are not removable.[112] NCL cites *Francisco v. Stolt Achievement, MT*, a Fifth Circuit case in which NCL alleges that the court affirmed a district court finding of removal jurisdiction and subject matter jurisdiction over a dispute brought by a Jones Act seaman.[113] According to Defendant, the Fifth Circuit held that the Convention did not recognize any exception to its applicability for seamen employment contracts, and because in the case before it, the agreement entered into by the seaman plaintiff met all jurisdictional prerequisites for application of the Convention, removal was appropriate and arbitration of his claims was mandatory.[114] Similarly, NCL contends, a judge in another section of the Eastern District of Louisiana held that removal of a Jones Act case is proper in *Amizola v. Dolphin Shipowner, S.A.*,

---

[110] *Id.* at p. 4 (quoting *Acosta v. Master Maintenance & Constr., Inc.*, 452 F.3d 373, 377 (5th Cir. 2006)).

[111] *Id.* at pp. 4–5 (quoting *Beiser v. Weyler*, 284 F.3d 665, 671–72 (5th Cir. 2002)).

[112] *Id.* at p. 5 (citing *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 272 (5th Cir. 2002); *Amizola v. Dolphin Shipowner, S.A.*, 354 F. Supp. 2d 689, 694–95 (E.D. La. 2004) (Lemmon, J.); *Bautista v. Star Cruises*, 286 F. Supp. 2d 1352, 1366–67 (S.D. Fla. 2003)).

[113] *Id.* (citing 293 F.3d at 270).

[114] *Id.* at pp. 5–6 (citing *Francisco*, 293 F.3d at 272–78).

wherein NCL avers that the court recognized the general rule regarding removal of Jones Act cases, but nevertheless explicitly held that "a claim under the Jones Act does not defeat removal under the Convention Act."[115] NCL argues that the cases cited by Plaintiff did not involve removal under 9 U.S.C. § 205, and that Plaintiff has cited no authority contrary to the Fifth Circuit's holdings that the Convention is a proper mechanism for removal of a Jones Act claim.[116]

Finally, NCL reurges many of the arguments made in its motion to compel arbitration and stay proceedings, arguing that this dispute meets all requirements for application of the Convention, and therefore for removal under § 205 and compulsion of arbitration.[117]

### 4.    Plaintiff's Arguments in Further Support of Remand

In reply, Plaintiff argues that Defendant's opposition is largely a rehashing of its motion to compel arbitration with just one additional Fifth Circuit case, *Franscisco v. Stolt Achievement MT*, that Defendant claims allows a Jones Act case subject to the Convention to be removed despite 28 U.S.C. § 1445(a)'s clear prohibition against removal of Jones Act cases.[118] Johnson argues, however, that *Franscisco* does not procedurally or factually support removal of this case.[119] Similarly, Johnson argues, the two district court decisions cited by Defendant, *Amizola v. Dolphin Shipowner, S.A.*,[120] from the Eastern District of Louisiana, and *Bautista v. Star Cruises*,[121] from the Southern

---

[115] *Id.* at p. 6 (quoting *Amizola*, 354 F. Supp. 2d at 695 (Lemmon, J.)).

[116] *Id.*

[117] *Id.* at pp. 6–12.

[118] Rec. Doc. 19 at p. 1 (citing *Francisco*, 293 F.3d at 270).

[119] *Id.*

[120]   354 F. Supp. 2d at 689.

[121]   286 F. Supp. 2d at 1352.

District of Florida, solely involved foreign seamen to whom the Convention clearly applied, as opposed to a U.S. seaman, to whom the Convention clearly does not apply.[122]

Johnson argues that there are many other cases involving U.S. seamen directly on point that mandate remanding to state court when a case is wrongfully removed under the Convention.[123] Plaintiff also contends that Defendant mischaracterizes *Francisco* as clearly recognizing that the Convention's removal provisions trump the Jones Act's prohibition on removal, whereas, in reality, the motion to remand in *Francisco* was denied because the district court found that the motion to remand under the "saving to suitors clause," rather than § 1445(a), was filed more than 30 days after the case was removed and that the plaintiff had therefore waived his right to remand the case.[124] According to Plaintiff, the district court's decision followed Fifth Circuit precedent holding that motions to remand pursuant to the "saving to suitors clause" are not jurisdictional and must be filed within 30 days of removal pursuant to 28 U.S.C. § 1446(b).[125] Therefore, Johnson contends, the remand in *Francisco* had nothing to do with the application of the Convention, and the denial of the motion to remand was not at issue during the appeal of the *Francisco* case to the Fifth Circuit.[126]

Johnson notes other alleged factual differences between *Francisco* and the instant case, including the fact that *Francisco* involved a plaintiff who was a citizen of the Philippines and to

---

[122] Rec. Doc. 19 at p. 1.

[123] *Id.* (citing *Armstrong v. NCL (Bahamas) Ltd.*, 998 F. Supp. 2d 1335 (S.D. Fla. 2013); *Smith-Varga v. Royal Carribean Cruises, Ltd.*, 2013 WL 3119471 (M.D. Fla. 2013); *Matabang v. Carnival Corp.*, 630 F. Supp. 2d 1361 (S.D. Fla. 2009)).

[124] *Id.* at p. 2 (citing *Francisco v. Stolt Achievement MT*, No. 00-3532, Rec. Doc. 17 (E.D. La. Feb. 6, 2001)).

[125] *Id.* (citing *In re Digicon Marine, Inc.*, 966 F.2d 158, 160 (5th Cir. 1992)).

[126] *Id.* at pp. 2–3.

whom all four of the jurisdictional requirements of the Convention clearly applied.[127] Furthermore, Johnson argues, unlike in this case, the plaintiff in *Francisco* was bound by a Philippine state employment agreement negotiated by a state employment agency in the Philippines, and it was "fairly obvious that the Jones Act would probably not apply to the foreign seaman's claim," whereas here the Jones Act clearly applies.[128]

Johnson avers that the only other cases cited by Defendant for its claim that removal under 9 U.S.C. § 205 trumps the provision prohibiting removal of Jones Act cases are *Amizola* and *Bautista*.[129] According to Johnson, as in *Francisco*, the plaintiffs in both *Amizola* and *Bautista* were Philippine seamen bound by a government employment agreement to which the Convention clearly applied.[130] Plaintiff argues that no detailed fact analysis was required in those cases to determine whether there was a substantial connection with a foreign state, as is required here.[131] Furthermore, Johnson alleges, although a judge in the Eastern District of Louisiana decided in *Amizola* that § 205 allows removal of a foreign seaman case in spite of § 1445(a), no authority or statutory language was cited to support such a conclusion.[132] Instead, Johnson argues, the rulings in both *Amizola* and *Bautista* are supported more by the fact that the Philippine plaintiffs in those cases were arguably making fraudulent Jones Act claims, which would not support the application of § 1445(a).

Plaintiff avers that the Convention clearly does not apply to this case, as evidenced by the

---

[127] *Id.* at p. 3.

[128] *Id.*

[129] *Id.*

[130] *Id.*

[131] *Id.* at pp. 3–4.

[132] *Id.* at p. 4.

legislative history of the treaty.[133] Plaintiff quotes *Ensco Offshore Co. v. Titan Marine L.L.C.*, a Southern District of Texas case stating that the language of § 202 appears to have been taken from the Uniform Commercial Code, suggesting that the term "abroad" specifically refers to a connection with a foreign state.[134] According to Johnson, *Ensco* and *Freudensprung* state that a reasonable relationship with a foreign state requires the involvement of a foreign element, such as property located abroad or the performance of a contract in a foreign country, and that such a connection does not exist in this case.[135]

Finally, Johnson urges the Court to consider an opinion by another section of the Eastenr District of Louisiana, *Asignacion v. Rickmers Genoa Schiffahrts*, "which contains an excellent discussion of the doctrine which voids arbitration agreements, which like the arbitration agreement in this case, prohibit a plaintiff from asserting a statutory cause of action such as the Jones Act."[136]

### 5.    Defendant's Sur-Reply in Opposition to Remand

In its sur-reply, NCL argues that Plaintiff attempts to "subvert the clear language of the Fifth Circuit in *Francisco v. Stolt Achievement M/T* by focusing on an unpublished order issued by a district court."[137] Defendant argues that, regardless of the basis for the district court's denial of the plaintiff's motion to remand, the case was a Jones Act case that was not remanded and for which the Fifth Circuit found removal and subject matter jurisdiction on the basis of the Convention.[138]

---

[133]   *Id.*

[134]   *Id.* at p. 5 (quoting 370 F. Supp. 2d 594, 600 (S.D. Tex. 2005)).

[135]   *Id.*

[136]   *Id.* (citing No. 11-627, Rec. Doc. 21 (E.D. La. May 25, 2011) (Zainey, J.)).

[137]   Rec. Doc. 21 at p. 1.

[138]   *Id.*

NCL also contends that Johnson's reliance on the unpublished decision in *Asignacion* is misleading because that opinion does not represent the current state of the law on the issue of enforcement of seamen's arbitration agreements under the Convention.[139] According to Defendant, *Asignacion* relies heavily on the Eleventh Circuit's opinion in *Thomas v. Carnival Corp.*,[140] which was found inapplicable to a crewman's Jones Act claim under the Convention in *Lindo v. NCL (Bahamas), Ltd.*[141] In fact, NCL avers, Judge Zainey himself noted that *Thomas* had been called into question in a September 2013 opinion in *Asignacion*.[142] Therefore, Defendant argues, the Court should deny Plaintiff's motion to remand and enforce the arbitration agreement.[143]

### III.  Law and Analysis

**A.      *The Convention Act (9 U.S.C. §§ 201–208)***

In 1958, the United Nations Economic and Social Council adopted the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention").[144] In 1970, the United States acceded to the treaty (the "Convention Act"), which was subsequently implemented by Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 201 *et seq.*[145]

Article II(1) of the Convention requires contracting states, including the United States, to recognize certain written arbitration agreements. It states:

---

[139]  *Id.* at p. 2.

[140]  573 F.3d 1113 (11th Cir. 2009).

[141]  Rec. Doc. 21 at p. 2 (citing 652 F.3d 1257 (11th Cir. 2011)).

[142]  *Id.* (citing 2013 U.S. Dist. LEXIS 129797, at *14–15 (E.D. La. Sept. 11, 2013)).

[143]  *Id.*

[144]   *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1262 (11th Cir. 2011).

[145]  *Id.*

24

>Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

Section 201 of the FAA provides that the Convention shall be enforced in U.S. courts:[146] The Supreme Court has stated that "[t]he goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries."[147]

The Convention Act provides that "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States."[148] In applying the Convention, the Fifth Circuit has held that it "contemplates a very limited inquiry by courts when considering a motion to compel arbitration," and that the court should compel arbitration if (1) there is an agreement in writing to arbitrate the dispute, (2) the agreement provides for arbitration in the territory of a Convention signatory, (3) the agreement arises out of a commercial legal relationship, and (4) a party to the agreement is not an American citizen.[149] Where all parties to the agreement are American citizens, the Convention Act states that the fourth element may be met in the alternative if the relationship between the parties involves property located abroad, envisages performance or enforcement abroad,

---

[146] 9 U.S.C. § 201 ("The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts in accordance with this chapter.").

[147] *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 520 n.15 (1974).

[148] 9 U.S.C. § 206.

[149] *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 273 (5th Cir. 2002) *holding modified by Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327 (5th Cir. 2004).

or has some other reasonable relation with one or more foreign states.[150] Furthermore, the "reasonable connection between the parties' commercial relationship and a foreign state [must be] independent of the arbitral clause itself."[151] Once these requirements are met, the Convention requires the district court to order arbitration, "unless it finds that the said agreement is null and void, inoperative or incapable of being performed."[152]

To implement the Convention, the FAA provides two causes of action in federal court for a party seeking to enforce arbitration agreements covered by the Convention: (1) an action to compel arbitration in accord with the terms of the agreement,[153] and (2) at a later stage, an action to confirm an arbitral award made pursuant to an arbitration agreement.[154] The defenses that parties may invoke to challenge either the decision to arbitrate or the recognition and enforcement of the arbitration award differ depending on the stage of the proceedings.[155] For example, after arbitration, a court may refuse to enforce an arbitral award if the award is contrary to the public policy of the country.[156] The party defending against the enforcement of an arbitral award bears the burden of proof.[157]

**B.**      ***Legal Standard on a Motion to Remand***

Pursuant to the applicable removal statute, a defendant may remove a state court action only

---

[150]  9 U.S.C. § 202; *see also Freudensprung*, 379 F.3d at 340.

[151]   *Ensco Offshore Co. v. Titan Marine L.L.C.*, 370 F. Supp. 2d 594, 597 (S.D. Tex. 2005) (quoting *Freudensprung*, 379 F.3d at 339–40).

[152]  *Freudensprung*, 379 F.3d at 339.

[153]  9 U.S.C. § 206.

[154]  9 U.S.C. § 207.

[155]  *See Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1263 (11th Cir. 2011).

[156]  Convention, art. V(2).

[157]  *Imperial Ethiopian Gov't v. Baruch–Foster Corp.*, 535 F.2d 334, 336 (5th Cir. 1976).

if the action could have originally been filed in federal court.[158] Generally, any civil action founded

on a claim or right arising under the Constitution, treaties or laws of the United States shall be

removable without regard to the citizenship or residence of the parties.[159] Under § 203 of the

Convention Act, "[a]n action or proceeding falling under the Convention shall be deemed to arise

under the laws and treaties of the United States."[160] Furthermore, § 205 of the Convention Act states:

> Where the subject matter of an action or proceeding pending in a State court relates
> to an arbitration agreement or award falling under the Convention, the defendant or
> the defendants may, at any time before the trial thereof, remove such action or
> proceeding to the district court of the United States for the district and division
> embracing the place where the action or proceeding is pending.

In general, however, suits properly brought in state court under the Jones Act may not be

removed.[161] The burden of establishing subject matter jurisdiction rests with the party seeking to

invoke it.[162]

## C.    *Analysis*

### 1.    **Motion to Remand**

The questions of whether the Convention applies to the Employment Agreement between

Johnson and NCL and whether this case was properly removed pursuant to the Convention, are

deeply intertwined. NCL argues that the Convention applies, and it is "settled law in the Fifth Circuit

---

[158]   *See* 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants.").

[159]   *Francisco v. STOLT ACHIEVEMENT MT*,  293 F.3d 270, 272 (5th Cir. 2002).

[160]   9 U.S.C. § 203.

[161]   46 U.S.C. § 30104; 28 U.S.C. § 1445(a); *Burchett v. Cargill, Inc.*, 48 F.3d 173, 175 (5th Cir. 1995).

[162]   *St. Paul Reinsur. Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) (citing *Gaitor v. Peninsular & Occidental Steamship Co.*, 287 F.2d 252, 253–54 (5th Cir. 1961)).

that Jones Act claims relating to an arbitration agreement under the Convention are removable under the Convention and its codifying legislation."[163] Johnson responds that the Convention does not apply to this case, and that regardless, the cases cited by NCL do not support the broad proposition that such cases may be removed notwithstanding the clear prohibition of removal of Jones Act claims.[164]

For example, Johnson criticizes NCL's reliance on *Francisco v. Stolt Achievement MT*, a case in which the Fifth Circuit held that, "[n]otwithstanding the saving to suitors clause" of the Jones Act,  a district court "had removal jurisdiction and subject matter jurisdiction if the pending dispute was one 'falling under' the Convention."[165] NCL characterizes *Francisco* as recognizing that the Convention, an international treaty, is an exception to the general rule that Jones Act claims are not removable.[166] Johnson notes, however, that the Fifth Circuit's statements in *Francisco* are arguably dicta;[167] in *Francisco*, as Johnson correctly points out, the district court held that the case need not be remanded because the plaintiff had waited more than 30 days after the case was removed to move to remand it, and therefore the plaintiff waived his right to challenge any procedural deficiencies in removal.[168] Although Defendant contends that "[r]egardless of the basis for the district court's denial

---

[163] Rec. Doc. 7 at p. 1.

[164] Rec. Doc. 19 at p. 1.

[165] *Francisco v. Stolt Achivement MT*,  293 F.3d 270, 272 (5th Cir. 2002).

[166] Rec. Doc. 7 at p. 2.

[167] Rec. Doc. 19 at p. 2. Johnson also argues that *Francisco* involved a motion to remand pursuant to the "saving to suitors clause," rather than § 1445(a), as in this case. *Id.* This appears to be a distinction without a difference, however, as other cases, as discussed below, have explicitly allowed removal of Jones Act claims pursuant to the Convention even when they were removed pursuant to § 1445(a) rather than the "saving to suitors" clause. *See, e.g.*, *Pysarenko v. Carnival Corp.*, No. 14-20010, 2014 WL 1745048, at *7 (S.D. Fla. Apr. 30, 2014) *aff'd*, 581 F. App'x 844 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 2378 (2015).

[168] *Francisco v. Stolt Achievement MT*, No. 00-3532, Rec. Doc. 17 (E.D. La. Feb. 6, 2001).

of the plaintiff's motion to remand, the case was a Jones Act case that was not remanded and for which the Fifth Circuit found removal and subject matter jurisdiction on the basis of the Convention,"[169] the basis for the district court's decision is not irrelevant. The mere fact that the case was not remanded does not create a broad proposition that the Convention trumps the Jones Act, given that the reason that the case was not remanded was due to a procedural defect, which is waiveable. Here, Johnson does not waive any such alleged defect. Therefore, contrary to NCL's claims, the Fifth Circuit's statement that removal jurisdiction was proper under the Convention was dicta, and does not necessarily compel the result urged by NCL.

Nevertheless, Defendant cites to a number of cases in which courts have allowed claims falling under the Convention to be removed despite the Jones Act's general prohibition on removal.[170] Johnson responds with a series of cases that he contends come to the opposite conclusion.[171] A review of the cases cited by Johnson, however, reveals none in which a court held that, although the Convention applied to the claim before it, the Jones Act prohibited removal. Instead, in each case, a court first found that the Convention did *not* apply to the claims before it, and then remanded the case as improperly removed.[172]

Moreover, the Eleventh Circuit, a judge on the Eastern District of Louisiana, and a judge on

---

[169] Rec. Doc. 21 at p. 1.

[170] Rec. Doc. 7 at p. 5 (citing *Francisco*, 293 F.3d 270, 272 (5th Cir. 2002); *Amizola v. Dolphin Shipowner, S.A.*, 354 F. Supp. 2d 689, 694–95 (E.D. La. 2004) (Lemmon, J.); *Bautista v. Star Cruises*, 286 F. Supp. 2d 1352, 1366–67 (S.D. Fla. 2003))

[171] Rec. Doc. 19 at p. 1 n.1 (citing *Armstrong v. NCL (Bahamas) Ltd.*, 998 F. Supp. 2d 1335 (S.D. Fla. 2013); *Smith-Varga v. Royal Carribean Cruises, Ltd.*, 2013 WL 3119471 (M.D. Fla. 2013); *Hines v. Carnival Corp.*, No. 11-20862, 2012 WL 1744843 (S.D. Fla. Mar. 30, 2012); *Matabang v. Carnival Corp.*, 630 F. Supp. 2d 1361 (S.D. Fla. 2009)).

[172] *See Armstrong*, 998 F. Supp. 2d at 1339 (declining to grant attorneys' fees and costs for improper removal because "there is no binding case law mandating remand on the facts of this case"); *Smith-Varga*, 2013 WL 3119471, at *4; *Hines*, 2012 WL 1744843, at *4; *Matabang*, 630 F. Supp. 2d at 1367.

the Western District of Louisiana have explicitly examined the question of whether the Jones Act requires remand of cases even when they relate to an arbitration agreement under the Convention, and have held that it does not. Indeed, the Eleventh Circuit recently stated that "this Court has routinely compelled arbitration of Jones Act claims that had been removed under 9 U.S.C. § 205 when they relate to an arbitration agreement under the Convention"[173] and noted that "the few other courts that have decided the issue have concluded that removal of Jones Act claims is proper under the Convention."[174] Furthermore, in *Amizola v. Dolphin Shipowner, S.A.,* a judge in the Eastern District of Louisiana decided that § 205 allows removal of a Jones Act case in spite of § 1445(a).[175] Similarly, in *Adams v. Oceaneering Int'l, Inc.*, a judge in the Western District of Louisiana rejected a plaintiff's argument that his Jones Act claim was nonremovable under the Convention.[176] Therefore, having found no Fifth Circuit authority in which a court has first held that the Convention applies and then found that, nevertheless, remand is warranted, the Court is persuaded by the analysis of the Eleventh Circuit, another section of the Eastern District of Louisiana, and a court in the Western District of Louisiana, in similar cases. Considering the Jones Act would only bar removal in this case if the Convention does not apply, the Court shall first analyze whether the Convention applies to the claims in this matter.

---

[173] *Trifonov v. MSC Mediterranean Shipping Co. SA*, 590 F. App'x 842, 845 (11th Cir. 2014) (citing *Martinez v. Carnival Corp.*, 744 F.3d 1240 (11th Cir. 2014); *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257 (11th Cir. 2011); *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005)).

[174] *Id.* (citing *Pysarenko*, 2014 WL 1745048, at *7 (concluding that "Jones Act claims are removable under the Convention"); *Allen v. Royal Caribbean Cruise, Ltd.*, 2008 WL 5095412, at *3–4 (S.D. Fla. 2008), *aff'd*, 353 F. App'x 360 (11th Cir. 2009); *Amizola*, 354 F. Supp. 2d at 695 ("a claim under the Jones Act does not defeat removal under the Convention Act"); *Acosta v. Norwegian Cruise Line Ltd.*, 303 F. Supp. 2d 1327, 1331 (S.D. Fla. 2003)).

[175] *Amizola*, 354 F. Supp. 2d at 695 (Lemmon, J.).

[176] No. 10-1253, 2010 WL 5437192 (W.D. La. Dec. 21, 2010).

2.       **Motion to Compel Arbitration**

As noted above, this Court must compel arbitration if four elements are met: (1) there is an agreement in writing to arbitrate the dispute, (2) the agreement provides for arbitration in the territory of a Convention signatory, (3) the agreement arises out of a commercial legal relationship, and (4) a party to the agreement is not an American citizen; or, where all parties to the agreement are American citizens, the relationship between the parties involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states.[177] Here, Johnson does not dispute that the first three elements are satisfied.[178] Furthermore, NCL does not contest that both it and Johnson are U.S. citizens for purposes of the Convention.[179] Therefore, the only question remaining for the Court to decide is whether the Employment Agreement envisaged performance abroad or had some other reasonable relation with one or more foreign states.

The parties urge the Court to focus on different facts they deem to be relevant. For instance, NCL emphasizes that Plaintiff was hired to work as a casino pit supervisor on a cruise ship that entered 10 different countries' ports and sailed constantly on the seas.[180] NCL argues that, from the date that Johnson signed the Employment Agreement to the date he ultimately signed off on November 30, 2015, the Dawn spent more than 80% of her time abroad, and that during that time period, onboard gaming could only occur when the Dawn was beyond three nautical miles from U.S.

---

[177] 9 U.S.C. § 202; *see also Freudensprung*, 379 F.3d at 340.

[178] *See* Rec. Doc. 15.

[179] Rec. Doc. 5-1 at p. 8.

[180] *Id.* at p. 10.

land.[181] NCL notes also that the Dawn sails under the flag of the Bahamas.[182] Furthermore, NCL contends, the Employment Agreement's plain language required Johnson to be able to obtain the necessary documents and visas required for travel to and from the vessels located worldwide and repeatedly referenced repatriation of the seafarer at the end of his employment.[183] Finally, NCL points to the fact that, pursuant to the Employment Agreement, Plaintiff was subject to being transferred to any other ship owned or operated by NCL, and NCL notes that it operates 12 ships containing casinos, which regularly call at ports in more than 70 countries.[184]

Johnson, on the other hand, both disputes the weight of the facts presented by Defendant and contends that the Court should consider other factors that weigh in his favor. Plaintiff argues that he signed the Employment Agreement in Boston, Massachusetts, and that it is silent as to a place of performance other than mentioning the Dawn as the initial vessel on which he would serve, subject to being reassigned to other unnamed vessels.[185] Johnson alleges that there was no itinerary attached to the contract and that he was not informed of or aware of the Dawn's itinerary at the time he signed the contract.[186] He further argues that he performed all of his work as a casino pit supervisor within the vessels' casino and never worked onshore in a foreign country while serving on the vessel, and that generally the vessels' casino was closed whenever the vessel was in foreign

---

[181] *Id.*

[182] *Id.*

[183] Rec. Doc. 17 at p. 2.

[184] *Id.*

[185] Rec. Doc. 15 at p. 2.

[186] *Id.*

territorial waters, except for the waters of Bermuda.[187]

Johnson and NCL both quote ample authority—mostly from the Southern District of Florida and the Eleventh Circuit—whose language favors their positions, and which generally contradict one another. The Court, therefore, is essentially being asked to choose between two lines of district court cases from another Circuit. In one, district courts in cases such as *Matabang v. Carnival Corp.*,[188] *Armstrong v. NCL (Bahamas) Ltd.*,[189] and *Hines v. Carnival Corp.*,[190] read the Convention narrowly and reason that the term "abroad" in the Convention requires that work take place on foreign soil, not aboard a vessel, thereby limiting arbitration.[191] In another line of cases, including *Odom v. Celebrity Cruises, Inc.*,[192] *D'Cruz v. NCL (Bahamas) Ltd.*,[193] and *Rutledge v. NCL (Bahamas) Ltd.*,[194] the district courts generally reject the reasoning of *Matabang* and its ilk. Focusing on the strong federal policy in favor of arbitration, those courts have required arbitration where employees perform their duties aboard ships that sail constantly on the seas and frequently enter

---

[187] *Id.*

[188] 630 F. Supp. 2d 1361, 1367 (S.D. Fla. 2009).

[189] 998 F. Supp. 2d 1335, 1339 (S.D. Fla. 2013).

[190] No. 11-20862, 2012 WL 1744843, at *3 (S.D. Fla. Mar. 30, 2012).

[191] *See, e.g.*, *Armstrong*, 998 F. Supp. 2d at 1338–39 (concluding that, although the employment agreement in question was executed in Venice, Italy and Venice served as the plaintiff's sign-on and sign-off port, the agreement did not envisage performance abroad because the plaintiff performed services only aboard the vessel and never on foreign soil, both the plaintiff and the defendant were U.S. citizens, the plaintiff was hired by the defendant through an employment agency located in the United States, and the plaintiff was paid in U.S. currency); *Matabang*, , 630 F. Supp. 2d at 1366 (finding that  the legal relationship in question contained no references to performance abroad or any foreign state even where the employment contract required all performers to provide an up to date passport, the vessel on which the plaintiff was employed visited the Bahamas twice a week, and the vessel spent as much as 80-85% of its time "in the Bahamas, in Bahamian waters and sailing on the high seas").

[192] No. 10-23086, 2011 WL 10636151, at *2 (S.D. Fla. Feb. 23, 2011).

[193] No. 15-20240, 2015 WL 1468327, at *1 (S.D. Fla. Mar. 30, 2015).

[194] No. 14-23682, 2015 WL 458133 (S.D. Fla. Feb. 3, 2015).

foreign ports, generally relying on the plain meaning of the Convention and finding that the term "abroad" applies to more than just those instances where the relationship envisages performance *in* foreign states.[195]

The diverging outcomes in district court cases are generally based more on statutory interpretation than on the specific facts in each case. District courts that have compelled arbitration in facts similar to the instant case have often relied, as this Court must, on the Fifth Circuit's holding in *Freudensprung v. Offshore Technical Services*.[196] In *Freudensprung*, the Fifth Circuit affirmed a district court decision compelling arbitration where an employer, a U.S. citizen, assigned its employee, also a U.S. citizen, to work on a barge off the coast of Nigeria.[197] There, the Fifth Circuit distinguished a contrary holding in, *Jones v. Sea Tow Services, Inc.*,[198] a Second Circuit Decision, noting that, despite an arbitration clause providing for arbitration in England under English law, the case in question involved U.S. citizens hired by a U.S. salvor to rescue a yacht that had grounded in U.S. waters off Long Island, New York.[199] By contrast, *Freudensprung* held, the case before it envisaged the performance of pipefitting services on barges in West African waters.[200]

---

[195] *See, e.g.*, *D'Cruz*, 2015 WL 1468327, at *1 (compelling arbitration in a suit brought by a U.S. citizen who worked as a systems manager in the IT department of the Dawn, the same vessel at issue in this case); *Odom*, 2011 WL 10636151, at *1–2 (holding that the Convention applied to an employment contract for a cast dancer on a cruise ship's musical productions in light of the fact that the plaintiff was hired to perform on a cruise ship that entered six different countries' ports and sailed constantly on the seas, and interpreting the term "abroad" in accordance with *Black's Law Dictionary* and *Webster's New World College Dictionary*, which defined the term as "[o]utside a country" and "outside one's own country," respectively) (citing *Black's Law Dictionary* 6 (8th ed. 2004); *Webster's New World College Dictionary* 4 (Michael Agnes ed., 4th ed. 2000)).

[196] 379 F.3d 327 (5th Cir. 2004).

[197] *Id.* at 332.

[198] 30 F.3d 360, 366 (2d Cir. 1994).

[199] *Freudensprung*, 379 F.3d at 340.

[200] *Id.* at 340–41.

NCL and Johnson dispute the meaning and applicability of *Freudensprung*. NCL correctly notes that, although Johnson seemingly argues that the Convention requires performance on foreign soil, *Freudensprung* contained no indication that the plaintiff ever set foot on foreign soil.[201] Johnson, on the other hand, points out that the agreement in *Freudensprung* called for work to be performed in Nigerian waters.[202] NCL contends that "the quotations from the applicable contracts in *Freudensprung* did not expressly state that plaintiff would be working on the waters or soil of a particular foreign state."[203] The Court notes, however, that the applicable contract in *Freudensprung* incorporated any work orders issued to the plaintiff, and the plaintiff later agreed to a work order to "work . . . as a barge leaderman in West Africa."[204] Therefore, while it appears clear that *Freudensprung* does not require an employee to literally work on foreign soil in order for a relationship agreement to "envisage[] performance or enforcement abroad, or ha[ve] some other reasonable relation with one or more foreign states," the Court also considers Johnson's observation that the contracts in *Freudensprung* apparently called for performance within the waters of a foreign state.

The Court notes, however, that as NCL argues, the Convention Act will apply even to relationships entirely between citizens of the United States if the relationship "envisages performance or enforcement abroad, *or* has some other reasonable relation with one or more foreign

---

[201]   Rec. Doc. 17 at p. 4. In fact, although he boarded the barge in Nigeria, Freudensprung "spent all of his time—eating, sleeping, and working—aboard the barge and doing the ship's work." *Freudensprung v. Offshore Tech. Servs., Inc.*, No. 03-20226, Appellant's Reply Br. (5th Cir. Aug. 19, 2003).

[202]   Rec. Doc. 15 at p. 3.

[203]   Rec. Doc. 17 at p. 4.

[204]   *Freudensprung*, 379 F.3d at 333.

states."[205] In *Freudensprung*, the Fifth Circuit held that the agreement between the two U.S. citizens "envisage[d] performance abroad—the performance of pipefitting services on WWAI's barges in West Africa."[206] The Fifth Circuit also went on to say that there was "a reasonable connection between the parties' commercial relationship and a foreign state,"[207] but it did not in any way appear to require that an employee's work or performance take place on the soil of a foreign state in order to constitute "performance abroad."

As noted above, courts finding that contracts such as the one in the instant matter are covered by the Convention favorably cite *Freudensprung* for the proposition that work performed off the coasts of other nations may meet the criteria of the Convention.[208] In response to this analysis of Fifth Circuit authority, Johnson cites *Ensco Offshore Co. v. Titan Marine L.L.C.*,[209] a Texas district court case, which Johnson characterizes as explaining that *Freudensprung* held only that a contract specifically calling for performance in a foreign state envisages performance abroad.[210] In *Ensco*, a court in the Southern District of Texas held that an arbitration clause calling for arbitration in London, England was unenforceable under the Convention in a case involving a contract to salvage a rig located 90 miles south of the coast of Louisiana in the Gulf of Mexico.[211] The court in *Ensco* acknowledged the strong policy in both the United States and the Fifth Circuit in particular in favor

---

[205] 9 U.S.C. § 202 (emphasis added).

[206] *Freudensprung*, 379 F.3d at 340–41.

[207] *Id.* at 341.

[208] *See Rutledge v. NCL (Bahamas) Ltd.*, No. 14-23682, 2015 A.M.C. 769, 772 (S.D. Fla. Feb. 3, 2015); *Odom v. Celebrity Cruises, Inc.*, No. 10-23086, 2011 WL 10636151, at *2 (S.D. Fla. Feb. 23, 2011).

[209] 370 F. Supp. 2d 594 (S.D. Tex. 2005).

[210] Rec. Doc. 15 at p. 2 n.2.

[211] *Ensco*, 370 F. Supp. 2d at 595.

36

of arbitration, stating that:

> To say that it is the public policy of the United States and the Fifth Circuit to enforce contractually agreed-upon arbitration provisions would be an understatement. It is hard to imagine a topic in recent years in which the Fifth Circuit has written more frequently and more consistently. Its statements are clear and concise. If there is an agreement in writing to arbitrate, it is the public policy of the federal courts to enforce that provision.[212]

*Ensco* nevertheless held that such a policy could not compel arbitration where there was no connection with a foreign nation.[213] Furthermore, *Ensco* engaged in an analysis of the legislative history of § 202 and found "some indication" that the language of § 202 was taken from the Uniform Commercial Code, and that the term "abroad" specifically referred to a connection with a foreign state.[214]

NCL argues that *Ensco* is inapplicable because the case involved a contract between two American companies for delivery of oil rig pieces from a rig located on the Outer Continental Shelf just off the Gulf Coast to the state of Texas.[215] NCL distinguishes *Ensco* as involving no foreign states,[216] a distinction that this Court finds is relevant to the analysis here. In *Ensco*, the court emphasized that the rig in question was just offshore from the coast of Louisiana and found the mere fact that the rig sat in international waters "more than twelve miles off the coast of the United States . . . insufficient in and of itself to qualify this agreement under the exceptions outlined in § 202."[217]

---

[212] *Id.* at 597.

[213] *Id.* at 600.

[214] *Id.*

[215] Rec. Doc. 17 at p. 8.

[216] *Id.*

[217] *Ensco*, 370 F. Supp. 2d at 601.

*Ensco* further noted that the envisaged performance in the case before it would take place in Texas.[218] In other words, in *Ensco*, two American companies agreed to a contract whereby a rig considered to be U.S. property would be towed to the United States from international waters just offshore from the Gulf Coast and repaired in Brownsville, Texas,[219] and the court found that the mere provision of an arbitration clause requiring arbitration in England did not create a sufficient foreign element to compel arbitration pursuant to the Convention.[220]

The facts of this case, however, differ sharply from those of *Ensco.* Here, during Plaintiff's time on the Dawn, the vessel touched ports in ten different countries, sailed constantly, and spent more than 80% of her time abroad.[221]  NCL claims that at the time that Plaintiff signed the Employment Agreement, the Dawn was scheduled to regularly sail to numerous foreign countries, and that its other vessels sail to more than 70 countries—information readily available online and in NCL's advertising.[222] Moreover, Johnson was hired specifically to oversee the casino, which NCL contends could only operate when the ship was at least three nautical miles from U.S. land or when the ship was in New Orleans but neither docked nor anchored.[223]

Furthermore, the contractual relationship between Johnson and NCL—the most relevant evidence for the Court to consider in determining whether the commercial relationship between them envisaged performance abroad—has a considerably more international flavor than that in *Ensco*,

---

[218] *Id.*

[219] *Id.* at n.5.

[220] *Id.* at 601.

[221] Rec. Doc. 5-1 at pp. 8, 10.

[222] *Id.*; Rec. Doc. 17 at p. 5.

[223] Rec. Doc. 5-1 at p. 8.

even if it may lack, as Johnson notes, an attached itinerary or direct reference to a particular foreign

nation. Although Johnson signed the Employment Agreement in Boston and the Agreement did not

specifically name a foreign nation where Johnson may be employed, the contract does list the Dawn

as the initial vessel on which Plaintiff would serve, subject to being reassigned to other unnamed

vessels.[224] Plaintiff claims that he was unaware of the Dawn's itinerary, but whether he knew its

precise routes or not, a contract with a cruise line whose ships undisputedly travel almost exclusively

to foreign ports of call cannot be deprived of its international character solely through the alleged

ignorance of its would-be employee.

      Moreover, Paragraph 14 of the Employment Agreement states that "[t]he Seafarer guarantees

that no circumstances exist which would hinder him/her from obtaining the necessary documents

and visas required for travel to and from the vessels located worldwide."[225] The Agreement also

states that "the Employer shall be responsible to repatriate the Seafarer at no cost to the Seafarer"

and that if a request for early termination is granted, "repatriation costs will be paid by the

Company."[226] Thus it is clear from both the documentation requirements and the discussions of

repatriation that the Agreement forewarned Johnson that he would be working outside the United

States, or "abroad," even if it did not list each particular nation within the contract.

      Therefore, the Court concludes that the Employment Agreement in this case envisaged

performance or enforcement abroad or had some other reasonable relation with one or more foreign

---

[224] Rec. Doc. 5-3 at p. 5.

[225] *Id.*

[226] *Id.* at pp. 5–6.

states.[227] Here, the Court is compelled to follow the guidance of the Fifth Circuit in *Freudensprung*, and emphasizes the strong federal policy in favor of arbitration, particularly international arbitration.[228]

Finally, Johnson has argued, citing almost no authority, that the application of Bahamian law in place of the Jones Act renders the arbitration clause and its choice of law agreement void.[229] NCL characterizes Johnson's argument as one alleging that the arbitration agreement is against public policy, which NCL correctly notes is improper at this initial enforcement arbitration stage and is reserved as a reason for a court to refuse to enforce an arbitral award.[230] Plaintiff may challenge the enforcement of the arbitration clause at this first stage of the proceedings, where a Court conducts "a very limited inquiry" as to whether to order arbitration,[231] by invoking the "null and void" defense.[232] The "null and void" defense, however, "limits the bases upon which an international arbitration agreement may be challenged to standard breach-of-contract defenses" such as fraud,

---

[227] 9 U.S.C. § 202.

[228] *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 275 (5th Cir. 2002) *holding modified by Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327 (5th Cir. 2004) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (holding that the federal policy favoring arbitration "applies with special force in the field of international commerce")).

[229] Rec. Doc. 15 at p. 5.

[230] Convention, art. V(2); *see also Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540 (1995).

[231] *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 273 (5th Cir. 2002).

[232] Convention, art. II(3) ("The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.").

mistake, and duress.[233] Here, Johnson has not made any such argument to the Court. Instead, his

argument appears to be solely one of "prospective waiver of a plaintiff's statutory right,"[234] an

argument that has been found to be premature at the initial enforcement stage.[235] Accordingly, the

Court need not address this argument at the initial enforcement stage.

---

[233] *DiMercurio v. Sphere Drake Ins. PLC*, 202 F.3d 71, 79–80 (1st Cir. 2000) (holding that the limited scope of the Convention's null and void clause "must be interpreted to encompass only those situations—such as fraud, mistake, duress, and waiver—that can be applied neutrally on an international scale"); *see also Bautista v. Star Cruises*, 396 F.3d 1289, 1302 (11th Cir. 2005).

[234] Rec. Doc. 15 at p. 5.

[235] *Authenment v. Ingram Barge Co.*, 878 F. Supp. 2d 672, 684 (E.D. La. 2012) (Milazzo, J.); *see also Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft mbH & Cie KG*, 783 F.3d 1010, 1021 (5th Cir. 2015), *cert. denied*, No. 15-305, 2016 WL 100832 (U.S. Jan. 11, 2016) (recognizing that the Supreme Court had declined to apply the doctrine twice in cases involving the enforceability of an agreement to arbitrate); *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 372 (4th Cir. 2012) ("The public policy defense, on the other hand, may only be asserted at the second stage of the arbitration-related court proceedings, the 'award-enforcement stage'—i.e., after an arbitration award has been made and the court is 'considering whether to recognize and enforce an arbitral award.'") (citing *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1277–80 (11th Cir. 2011)).

As noted above, because the Convention applies, the Court need not separately analyze whether removal was appropriate. The Convention allows removal even of Jones Act claims, and the Court therefore has both subject-matter and removal jurisdiction, pursuant to the Convention, to enforce the arbitration clause in the Employment Agreement.

## IV.  Conclusion

For the reasons set forth above,

**IT IS HEREBY ORDERED** that NCL's "Motion to Compel Arbitration and Stay Proceedings"[236] is **GRANTED.**

**IT IS FURTHER ORDERED** that Johnson "Motion to Remand"[237] is **DENIED.**

**NEW ORLEANS, LOUISIANA** this  19th   day of February, 2016.

**NANNETTE JOLIVETTE BROWN
UNITED STATES DISTRICT JUDGE**

---

[236]  Rec. Doc. 5.

[237]  Rec. Doc. 6.